UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

KERRY A COLLINS,                          )
                                          )
          Plaintiff,                      )
                                          )
     v.                                   )          CIVIL NO.  1:10cv47
                                          )
MICHAEL J. ASTRUE,                        )
COMMISSIONER OR                           )
SOCIAL SECURITY,                          )
                                          )
          Defendant.                      )

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant

Commissioner of Social Security Administration denying plaintiff's application for Disability

Insurance Benefits (DIB) and Supplemental Security Income (SSI) as provided for in the Social

Security Act.  42 U.S.C. §416(I); 42 U.S.C. §423; 42 U.S.C. §§ 1382, 1382c(a)(3).  Section

205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a

certified copy of the transcript of the record including the evidence upon which the findings and

decision complained of are based.  The court shall have the power to enter, upon the pleadings

and transcript of the record, a judgment affirming, modifying, or reversing the decision of the

[Commissioner], with or without remanding the case for a rehearing."  It also provides, "[t]he

findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be

conclusive. . . ."  42 U.S.C. §405(g).

The law provides that an applicant for disability insurance benefits must establish an

"inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to last for a continuous period of not less

than 12 months. . . ."  42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A).  A physical or mental

impairment is "an impairment that results from anatomical, physiological, or psychological

abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic

techniques."  42 U.S.C. §423(d)(3).  It is not enough for a plaintiff to establish that an

impairment exists.  It must be shown that the impairment is severe enough to preclude the

plaintiff from engaging in substantial gainful activity.  Gotshaw v. Ribicoff, 307 F.2d 840 (7th

Cir. 1962), cert. denied, 372 U.S. 945 (1963); Garcia v. Califano, 463 F.Supp. 1098 (N.D.Ill.

1979).  It is well established that the burden of proving entitlement to disability insurance

benefits is on the plaintiff.  See Jeralds v. Richardson, 445 F.2d 36 (7th Cir. 1971); Kutchman v.

Cohen, 425 F.2d 20 (7th Cir. 1970).

 Given the foregoing framework, "[t]he question before [this court] is whether the record

as a whole contains substantial evidence to support the [Commissioner's] findings."  Garfield v.

Schweiker, 732 F.2d 605, 607 (7th Cir. 1984) citing Whitney v. Schweiker, 695 F.2d 784, 786

(7th Cir. 1982); 42 U.S.C. §405(g).  "Substantial evidence is defined as 'more than a mere

scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion.'" Rhoderick v. Heckler, 737 F.2d 714, 715 (7th Cir. 1984) quoting

Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); see Allen v. Weinberger,

552 F.2d 781, 784 (7th Cir. 1977).  "If the record contains such support [it] must [be] affirmed,

42 U.S.C. §405(g), unless there has been an error of law."  Garfield, supra at 607; see also

Schnoll v. Harris, 636 F.2d 1146, 1150 (7th Cir. 1980).

 In the present matter, after consideration of the entire record, the Administrative Law

Judge ("ALJ") made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2. The claimant has not engaged in substantial gainful activity since January 31, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has severe physical impairments (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, including Listing 1.04 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

5. The claimant's allegations are not entirely credible.

6. The claimant has a limited residual functional capacity.

7. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

8. The claimant was born on May 14, 1957 and was 49 years old, which is defined as a younger individual, on the alleged onset date. He is now 52 years old, which is defined as an individual closely approaching advanced age (20 CFR 404.1563 and 416.963).

9. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

10. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

11. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

12. The claimant has not been under a disability, as defined in the Social Security Act, from January 31, 2007 through the date of this decision (20 CFR

404.1520(g) and 416.920(g)).
(Tr. 24-32).

Based upon these findings, the ALJ determined that Collins was not entitled to disability insurance benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Collins, proceeding pro se, filed his opening brief on June 4, 2010. On September 16, 2010, the defendant filed a memorandum in support of the Commissioner's decision, and on September 26, 2010, Collins (now represented by counsel) filed his reply. Upon full review of the record in this cause, this court is of the view that the ALJ's decision should be affirmed.

A five step test has been established to determine whether a claimant is disabled. See Singleton v. Bowen, 841 F.2d 710, 711 (7th Cir. 1988); Bowen v. Yuckert, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

Nelson v. Bowen, 855 F.2d 503, 504 n.2 (7th Cir. 1988); Zalewski v. Heckler, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord Halvorsen v. Heckler, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that step five was the determinative inquiry.

Collins filed DIB and SSI applications on February 16, 2007 and January 31, 2007,

respectively, alleging disability beginning January 31, 2007, due to pain in his neck, shoulders, and arms. Collins' DIB and SSI applications were denied initially and upon reconsideration. Collins subsequently requested a hearing before an administrative law judge. Collins appeared with counsel and testified at a hearing held by Administrative Law Judge Brian Bernstein ("ALJ") on October 15, 2008. On June 2, 2009, the ALJ determined that Collins was not disabled, as defined by the Act, and thus was not entitled to DIB or SSI benefits (Tr. 21-32). The ALJ's decision became final when the Appeals Council denied Collins's request for review.

Collins was 49 years old on his alleged disability onset date and 52 years old at the time of the ALJ's decision; therefore, he was considered a "younger person" and "an individual closely approaching advanced age" under the regulations (Tr. 30). See 20 C.F.R. §§ 404.1563(c), 404.1563(d). Collins had at least a high school education and was able to communicate in English (Tr. 31, 242-43, 248). Collins had past relevant work as a warranty technician, leatherman construction worker, home remodeler, and car salesman (Tr. 30, 56-59).

In August 2005, Collins presented to Dr. Isa Canavati, a neurosurgeon, for evaluation of his neck pain complaints with radiation into his right arm (Tr. 391-92). An MRI of Collins' neck revealed disc protrusions at C5-6 and C6-7 and foraminal stenosis (Tr. 392, 455, 456). On August 26, 2005, Collins underwent neck surgery to treat the herniated discs in his neck (Tr. 388). Collins tolerated the procedure well and was released to return to work on September 12, 2005 (Tr. 385, 386, 388). Follow-up examinations with Dr. Canavati indicated that Collins did quite well following surgery with complete resolution of his upper extremity pain and normal motor examinations (Tr. 382).

In January 2007, Collins presented to Dr. Canavati with complaints of increasing pain in

the neck with radiation into both shoulders and arms, left greater than right (Tr. 440-41). Collins also alleged that he experienced numbness in both hands (Tr. 440). On examination, Dr. Canavati reported that Collins had tenderness in the cervical region with restriction of all motions of the cervical spine (Tr. 440). An MRI of Collins' neck revealed post-operative changes at the C5-6 and C6-7 levels with narrowing of both disc spaces and foraminal compromise (Tr. 436, 440). An x-ray of Collins' neck revealed evidence of degenerative disc disease and spondylosis, most severe at the C6-C7 level, and moderate disc space narrowing at C5-C6 (Tr. 381, 440). An EMG revealed evidence of left C5-6 radiculopathy with some evidence of denervation as well as some evidence of bilateral carpal tunnel syndrome (Tr. 440). Dr. Canavati diagnosed Collins with degenerative disc disease at C5-6 and C6-7 with collapse of disc space and foraminal stenosis, EMG evidence of left C5-6 radiculopathy, status-post neck surgery in 2005, and EMG evidence of carpal tunnel syndrome (Tr. 441). Collins agreed to proceed with surgical intervention (Tr. 441).

In February 2007, Collins underwent an anterior cervical diskecotomy and fusion at C5-6 and C6-7 performed by Dr. Canavati (Tr. 371-72). Collins tolerated the procedure well and was transferred to recovery in stable condition (Tr. 371).

In March 2007, Collins returned to Dr. Canavati for one month status post-surgery follow-up evaluation (Tr. 425). Dr. Canavati noted that x-rays of Collins' cervical spine showed anatomic alignment (Tr. 425). He reported that Collins' motor examination was grossly normal (Tr. 425). Dr. Canavati advised Collins to continue with a 20 pound lifting restriction for the next 3 months (Tr. 425).

Also in March 2007, Dr. James Chandler, Collins' family practice physician, completed a

Determination of Medicaid Disability form (Tr. 429-35). Dr. Chandler noted that Collins suffered from chronic neck pain (Tr. 430). Dr. Chandler opined that Collins had moderate limitations in his ability to sit, stand, and walk (Tr. 435). He further opined that Collins had significant limitations in his ability to lift, grasp, manipulate, push, pull, squat, crawl, climb, and reach above his shoulders (Tr. 425). He also indicated that Collins had moderate limitations in bending, being around machinery, driving, repetitive leg maneuvers, and normal housework (Tr. 435). Dr. Chandler opined that Collins did not have any significant limitation in caring for his personal needs (Tr. 435).

In April 2007, Dr. Michael Holton conducted a consultative physical examination on Collins at the request of the Social Security Administration (Tr. 398-400). Collins reported that he experienced persistent pain in his neck and right arm on a daily basis with varying degrees of intensity as well as a lot of tightness and stiffness in his neck and arm (Tr. 398). Collins stated that he was able to sit for about 30 to 45 minutes without changing positions, that he had no problems with standing, and that he could walk 4 or 5 blocks without significant increase in discomfort or difficulty (Tr. 398). Dr. Holton noted that Collins did not appear to have any difficulty getting out of a chair and on and off the examination table (Tr. 398). Collins had normal gait and station without any assistive measures (Tr. 399). Dr. Holton reported that Collins had no difficulty in walking on heels, toes, tandem walking, or squatting (Tr. 399). Dr. Holton noted that Collins had some tenderness over the right cervical area and right shoulder and some limitation in range of motion of the cervical spine (Tr. 399, 401). He reported that Collins retained normal muscular strength and tone in all extremities with no evidence of atrophy or muscle spasm (Tr. 399). Dr. Holton further reported that Collins's grip strength was

normal (Tr. 400). Dr. Holton noted that Collins had no gross sensory deficits, although he had diminished reflexes in his arms and legs (Tr. 399-400). Dr. Holton diagnosed Collins with degenerative disc disease of the cervical spine post-cervical fusion with radicular signs (Tr. 400).

In April 2007, Dr. Chandler completed a "Cervical Spine Residual Functional Capacity Questionnaire" form (Tr. 417-21, 424). Dr. Chandler reported that Collins suffered from chronic right neck and right arm pain (Tr. 417). Dr. Chandler stated that physical therapy, medications, surgery, and exercise had not helped to relieve Collins' pain symptoms (Tr. 418). Dr. Chandler opined that Collins could sit for less than 2 hours in an 8-hour workday and could stand and/or walk for less than 2 hours in an 8-hour workday (Tr. 420). He stated that Collins could sit for 30 minutes before he needed to get up and that he could stand for 30 minutes before he needed to sit back down (Tr. 419). He indicated that Collins would require a job that would permit him to shift positions at will from sitting, standing, or walking (Tr. 420). Dr. Chandler further opined that Collins could not lift and/or carry anything that weighed more than about 7 pounds (Tr. 424). Dr. Chandler indicated that Collins would need to take unscheduled breaks every 15 to 30 minutes in order to rest his head on a high back chair (Tr. 420). He also indicated that Collins could occasionally look up and down, but could rarely hold his head in static position or turn his head left or right (Tr. 420). Dr. Chandler opined that Collins could occasionally twist, stoop, crouch, and squat, but could rarely climb ladders or stairs (Tr. 421). He further opined that Collins could rarely use his right upper extremity to grasp, turn, and twist objects, to perform fine manipulations, and to reach overhead (Tr. 421). Dr. Chandler also opined that Collins was likely to be absent from work about three days per month (Tr. 421).

In May 2007, Dr. J. Corcoran, a state agency reviewing physician, completed a Physical

Residual Functional Capacity Assessment form (Tr. 403-10). Dr. Corcoran opined that Collins could lift and/or carry 20 pounds occasionally and 10 pounds frequently, could stand and/or walk for about 6 hours in an 8-hour workday, and could sit for about 6 hours in an 8-hour workday (Tr. 404). Dr. Corcoran opined that Collins could frequently balance and kneel and could occasionally climb ramps and stairs, stoop, crouch, and crawl, but could never climb ladders, ropes, or scaffolds (Tr. 405). He also opined that Collins was limited to occasional overhead reaching bilaterally (Tr. 406). Dr. M. Ruiz, another state agency reviewing physician, affirmed Dr. Corcoran's opinion in July 2007 (Tr. 458).

In June 2007, Dr. Chandler composed a letter stating that Collins had degenerative arthritis of the neck and upper arm (Tr. 413). Dr. Chandler stated that, at that time, no other therapy or surgery would be of benefit to Collins, and, thus, Collins would have to live with his current condition (Tr. 413). Later in June 2007, Dr. Chandler reported that Collins was feeling better (Tr. 500). He again emphasized that there was nothing more that could be done physically for Collins at that time (Tr. 500). In September 2007, Dr. Chandler noted that Collins was somewhat compliant, but that he had stopped taking his medications (Tr. 499).

In February 2008, Collins returned to Dr. Canavati with complaints of residual pain in the neck and shoulders with occasional pain in his upper arms (Tr. 487). Collins reported that he had difficulty with pushing, pulling, and lifting with his arms as well as any motion of the neck, particularly with extension or extreme rotation (Tr. 487). Collins also alleged that he had been experiencing significant lower back pain with radiation to the buttocks and upper thighs (Tr. 487). Upon examination, Dr. Canavati noted that Collins had tenderness in the cervical and lumbar regions and restriction of all motion of the cervical and lumbar spine by about 50% (Tr.

487). Dr. Canavati reported that Collins' motor examination was grossly normal and that his strength was also normal (Tr. 487). He also noted that Collins' gait and station were steady (Tr. 487). An MRI of Collins' cervical spine indicated that Collins had mild degenerative disc disease at C4-5 and C7-T1 with normal alignment and no soft tissue swelling (Tr. 483). An MRI of Collins' lumbar spine revealed evidence of mild degenerative disc disease at L1-L5 (Tr. 483). Based on Collins' examination and x-ray findings, Dr. Canavati recommended that Collins continue conservative treatment (Tr. 488). He also recommended physical therapy, but Collins stated that he was concerned about the cost due to a lack of insurance (Tr. 488). Dr. Canavati gave Collins instructions for a home exercise program (Tr. 488).

In August 2008, Collins presented to Dr. Gregory Hoffman, an orthopaedic surgeon, with complaints of chronic neck and lower back pain (Tr. 521-22). Collins denied any radiculopathy, paresthesias or numbness in his lower extremities, but did note occasional pain in his buttocks (Tr. 521). Dr. Hoffman reported that Collins had normal muscle strength testing in his arms and legs (Tr. 521). Dr. Hoffman noted that an MRI revealed evidence of mild degenerative disc disease at L5-S1 with no acute herniation (Tr. 521). Dr. Hoffman stated that he did not believe that Collins was a surgical candidate (Tr. 522). Dr. Hoffman recommended that Collins undergo epidurals and physical therapy to treat his symptoms; however, Collins declined, stating that he was unable to afford those interventions (Tr. 522).

In September 2008, Collins presented to Dr. Canavati with chronic cervical and lower back pain complaints (Tr. 507-08). Dr. Canavati noted that a recent MRI of Collins' lumbar spine showed evidence of mild multilevel disc bulge and degenerative changes that were treated conservatively (Tr. 503, 507). He noted that the repeat MRIs of Collins' cervical and lumbar

spines revealed diffuse degenerative changes with mild osteophytes (Tr. 503, 504, 507). He noted that the MRI's did not reveal any significant cord compression (Tr. 507). On examination, Dr. Canavati reported that Collins' motor examination was grossly normal and that his muscle strength was also normal (Tr. 507). Based on Collins's examination and MRI findings, Dr. Canavati recommended continued conservative treatment with pain management (Tr. 508).

In September 2008, Collins complained of pain in his right hand (Tr. 511). An x-ray of Collins' right hand revealed mild to moderate osteoarthritis in his finger joints without evidence of fracture (Tr. 511).

At the administrative hearing, Collins alleged that he was unable to work due to neck, arm, and lower back pain (Tr. 46). Collins testified that his pain symptoms were "pretty much constant," but that sometimes his pain symptoms come and go depending on the day (Tr. 48). He alleged that his pain symptoms interfered with his ability to concentrate (Tr. 49). Collins also alleged that he had to frequently shift positions between sitting and standing due to his pain symptoms (Tr. 49). Collins alleged that he was only able to walk for about eight short blocks before he had to sit down and rest (Tr. 50). Collins also stated that he was able to sit for 20 minutes before he had to stand up and that he was able to stand for 20 minutes before he had to sit down (Tr. 51). Collins alleged that he was only able to lift between 7 and 10 pounds due to a pinched nerve in his neck and muscle atrophy in his arms (Tr. 51).

At the hearing, Collins testified that he last worked a full-time job in January 2007, but that he had continued working part-time as a tow truck driver (Tr. 38). Collins testified that his part-time job involved driving a tow truck to the scene of an accident, attaching a chain to the axle of the disabled vehicle, and then allowing the tow truck to pull the car into the bed of the

truck (Tr. 42-45). Collins stated that, if a car was submerged in water, he had a pair of "chest waders" that he used to work in the water in order to attach the towing chain to the submerged vehicle (Tr. 45). He also testified that he sometimes had to walk down and climb up embankments in order to attach the chain to a disabled vehicle (Tr. 53).

At the administrative hearing, the ALJ described a hypothetical individual of Collins' age, education, and work experience who was limited to a range of light work that included a sit/stand option and did not require him to stand or walk for longer than 75% of an 8-hour workday (Tr. 29, 55). The hypothetical individual was unable to perform tasks that required constant fine manipulation work, gripping, grasping, twisting, turning, picking, pushing, or pulling with his hands and fingers (Tr. 29, 55-56). The individual was also unable to perform work that imposed close regimentation of production (Tr. 30, 55). Dr. Joseph Habernack, a vocational expert ("VE"), testified that such a hypothetical individual would be able to perform 200-250 jobs as a cabinet assembler, 1,000-1,500 jobs as an inspector, 75 to 100 jobs as a laundry folder, 100 to 150 jobs as a table clerk, and 100 to 150 jobs as a microfilm processor in the regional economy (Tr. 59)[1].

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which

---

[1] Collins claims that the transcript does not support the contention that the VE found that Collins could do jobs found in the regional economy. Collins objects that portions of the transcript are blank because the transcriber could not understand the testimony. See Tr. at 345. However, Collins is not using the official transcript which has no omissions and is found at Tr. 34-61. Collins also claims that the VE did not properly answer the question with respect to whether there were jobs available to Collins with his limitations. Collins argues that the VE responded in terms of transferability of skills when the question was based on limitations. A review of the VE's testimony as a whole, however, reveals that the VE took the limitations into account in determining to which jobs Collins' skills could transfer.

can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The agency has promulgated regulations that set forth a five-step sequential process for analyzing disability claims. 20 C.F.R. §§ 404.1520, 416.920. A claimant has the joint burdens of production and persuasion through at least step four, where the individual's residual functional capacity (RFC) is determined. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987); 20 C.F.R. §§ 404.1545, 416.945. At step five the Commissioner bears the burden of proving that there are jobs in the national economy that the claimant can perform. Herron v. Shalala, 19 F.3d 329, 333 n.18 (7th Cir. 1994). In the present case, the ALJ found that Collins retained the ability to perform other work within the national economy.

The agency's final decision is subject to review pursuant to 42 U.S.C. § 405(g), which provides that the agency findings "as to any fact, if supported by substantial evidence, shall be conclusive." "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Furthermore, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or on the [Commissioner's] designate, the ALJ)." Walker v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)(citations omitted). This court must accept the ALJ's findings if they are supported by substantial evidence, and may not substitute its judgment for that of the ALJ. Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986).

The agency's final decision is subject to review pursuant to 42 U.S.C. § 405(g), which provides that the agency findings "as to any fact, if supported by substantial evidence, shall be

conclusive." "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Furthermore, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or on the [Commissioner's] designate, the ALJ)." Walker v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)(citations omitted). This court must accept the ALJ's findings if they are supported by substantial evidence, and may not substitute its judgment for that of the ALJ. Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986).

In support of reversal, Collins argues that the evidence of record demonstrates that he was disabled as a result of his neck and back pain. The defendant, however, points out that the ALJ's determination that Collins was not disabled was supported by substantial evidence of record. Notably, the ALJ's residual functional capacity ("RFC") finding found substantial support from multiple medical source opinions, the objective clinical findings, Collins' own admissions, and other evidence of record (Tr. 28-30). For example, the ALJ reasonably determined that Collins required the option to sit or stand while working and that he was unable to stand and walk for longer than 75% of an 8-hour workday (Tr. 29). This finding was supported by substantial evidence that included: (1) Collins's own allegations that he could not sit, stand, or walk for prolonged periods and that he had to frequently shift positions between sitting and standing (Tr. 49-51); (2) the state agency reviewing opinions of Dr. Corcoran and Dr. Ruiz, who opined that Collins was able to sit or to stand/walk for a total of 6 hours in an 8-hour workday (Tr. 404, 458); (3) Dr. Chandler's treating opinion that stated that Collins had moderate limitations in his ability to sit, stand, and walk and would require the

option to shift positions between sitting, standing, and walking (Tr. 420, 435); and (4) objective medical findings which indicated that Collins had normal gait and station without assistive devices (Tr. 399, 487), normal motor examinations (Tr. 399-400, 425, 487, 507), and normal muscle strength (Tr. 399, 487, 507, 521).

The ALJ also reasonably determined that Collins was limited to lifting and/or carrying 20 pounds occasionally and 10 pounds frequently (Tr. 29). This finding was supported by substantial evidence that included: (1) the state agency reviewing opinions of Dr. Corcoran and Dr. Ruiz, who opined that Collins was able to lift and/or carry 20 pounds occasionally and 10 pounds frequently (Tr. 404, 458); (2) Dr. Cavanati's treating opinion that Collins required a 20 pound lifting restriction for a few months following his February 2007 surgery (Tr. 425); and (3) objective medical evidence indicating that Collins had normal muscle strength in his upper extremities (Tr. 399, 487, 507, 521).

The ALJ further reasonably determined that Collins should be limited to jobs that did not require constant fine work, gripping, grasping, twisting, turning, picking, pushing, or pulling with his hands and fingers (Tr. 29). This finding was also supported by substantial evidence of record that included: (1) Collins' allegations that he had difficulty gripping, that his hands are painful, and that his left arm and hand fell asleep (Tr. 46, 52); (2) evidence that Collins had mild to moderate arthritic changes in his finger joints (Tr. 511); (3) objective medical findings which indicated that Collins' grip strength and fine finger manipulation abilities were normal (Tr. 400, 404); and (4) the fact that Collins remained capable of performing part-time work as a tow truck driver, which Collins admitted involved the use of his hands and fingers in order to attach the towing chain to disabled vehicles (Tr. 42-45, 53).

Clearly, the ALJ's RFC finding was supported by substantial evidence that included multiple medical source opinions, objective clinical findings, Collins' own admissions, and other evidence of record (Tr. 28-30). To the extent that the ALJ declined to adopt certain functional limitations identified by Dr. Chandler or other functional limitations alleged by Collins, the ALJ reasonably found that such limitations were not consistent with the objective medical evidence, the other medical source opinions of record, or Collins's work activity as a tow truck driver, as discussed above (Tr. 28-30).

Collins contends that the fact that he continued to work as a tow truck driver on a part-time basis during his alleged period of disability should not weigh against his allegations of being totally disabled. However, the ALJ reasonably considered Collins's part-time work activity as a tow truck driver during his alleged period of disability as one factor that supported his finding that Collins was not disabled (Tr. 28-30). At the administrative hearing, Collins testified that his job as a tow truck driver involved driving a tow truck to the scene of an accident, attaching a chain to the axle of the disabled vehicle, and then allowing the tow truck to pull the car into the bed of the truck (Tr. 42-45). Collins testified that his job sometimes required him to wade into water and walk down and climb up embankments in order to attach the towing chain to wrecked vehicles (Tr. 45, 53). Thus, in light of Collins' testimony, the ALJ reasonably found that Collins' ongoing performance of such work activity during his alleged period of disability suggested that Collins was not as functionally limited as he alleged, especially with regard to his allegations involving his level of pain, difficulty gripping and grasping objects, performing postural movements such as bending, and difficulty being able to move his head up, down, or sideways (Tr. 28-30). Contrary to Collins' argument, the ALJ was

fully entitled to consider his ongoing work activity, even part-time work that did not constitute

substantial gainful activity, as a factor that supported his RFC and credibility findings. See

Castile v. Astrue, 2010 WL 3188930, at *3 (7th Cir. Aug. 13, 2010) (holding that the fact that

Castile continued to work and applied for another job during her alleged period of disability

"flies in the face of her claim that it is 'impossible' for her to work at all."); Berger v. Astrue,

516 F.3d 539, 546 (7th Cir. 2008) (claimant's ability to perform part-time work during his

alleged period of disability supported the ALJ's credibility finding - "Although the diminished

number of hours per week indicated that Berger was not at his best, the fact that he could

perform some work cuts against his claim that he was totally disabled."); Williams-Overstreet v.

Astrue, 2010 WL 431447, at *5 (7th Cir. Feb. 8, 2010) ("It was reasonable for the ALJ to

conclude that Mrs. Overstreet's job at the airport - transporting passengers in a golf cart, and

sometimes pushing them in wheelchairs, six hours a day, four days a week - suggested that her

impairments did not limit her as much as she claimed, and that she could perform sedentary

work as a data-entry clerk or administrative assistant.").

Collins also contends the ALJ's decision was erroneous because the vocational expert

testified that no jobs would be available in response to hypothetical questions asked by his

attorney at the hearing. However, it is clear that Collins' argument is without merit.

In this case, Collins' attorney at the administrative hearing asked the vocational expert

a series of hypothetical questions that contained functional limitations based on either Collins'

own subjective allegations or Dr. Chandler's opinion (i.e., being able to lift only 7 pounds

frequently, being unable to move his head, etc.) (Tr. 59-60). In response to these questions, the

vocational expert testified that no jobs would be available if such limitations were imposed

upon an individual (Tr. 59-60). While Collins contends that this testimony established that he was disabled, Collins ignores that the ALJ reasonably found that the functional limitations contained within his attorney's hypothetical questions were not supported by substantial evidence of record (Tr. 28-30). The ALJ is only required to incorporate into his hypothetical question those impairments and limitations that he accepts as credible. See Schmidt v. Astrue, 496 F.3d 833, 846 (7th Cir. 2007); see also Ehrhart v. Sec'y of Health & Human Servs., 969 F.2d 534, 540 (7th Cir. 1992). As discussed previously, the ALJ reasonably determined that Collins' allegations of disabling functional limitations and Dr. Chandler's opinion were not credible; therefore, the ALJ was not required to incorporate such alleged limitations into his hypothetical to the vocational expert. Id.

Next, Collins contends that additional evidence that was not before the ALJ demonstrates that he was disabled and that the ALJ's decision was erroneous. Specifically, Collins submitted several additional exhibits with his brief that were either not contained within the administrative record at all or were submitted to the Appeals Council after the ALJ rendered his decision (Tr. 4), including a letter dated June 3, 2010 from Dr. William Hedrick, a treating psychiatrist, and accompanying treatment notes marked as Exhibit D (see Pl.'s Br. at 28-30); a letter dated October 26, 2009 from Dr. Joseph Putnam, a treating family practice physician (see Pl.'s Br. at 108); an undated letter from Ms. Heather Stegemann, a manager at Hometown Rent-to-Own, marked as Exhibit F (see Pl.'s Br. at 70); and a sworn affidavit from Collins dated July 1, 2009 (see Pl.'s Br. at 72-75).

However, contrary to Collins' argument, it is well-established that a reviewing court may not consider evidence that was not before the ALJ as a basis for a finding of reversible

error in the ALJ's decision. See Eads v. Sec'y of Health and Human Servs., 983 F.2d 815, 816-17 (7th Cir. 1993) ("[The ALJ] cannot be faulted for having failed to weigh evidence never presented to him..."); Rice v. Barnhart, 384 F.3d 363, 366 n.2 (7th Cir. 2004) ("Although technically a part of the administrative record, the additional evidence submitted to the Appeals Council cannot now be used as a basis for a finding of reversible error."). In the present case, because the additional medical evidence submitted by Collins was not properly presented to the ALJ during the administrative proceedings, this Court is limited to considering the evidence that was before the ALJ in order to determine whether the ALJ's decision was supported by substantial evidence. Id. Accordingly, this Court rejects Collins' request to consider such evidence as a basis for finding that the ALJ's decision was not supported by substantial evidence.

Collins has not requested that this Court issue a sentence six remand on the basis of the additional evidence that he has submitted with his brief. Thus, Collins is not entitled to such relief. See Eads, 983 F.2d at 817; Diaz v. Chater, 55 F.3d 300, 305 n.1 (7th Cir. 1995). In any event, even if he had requested a sentence six remand, Collins has failed to satisfy his burden of demonstrating that the additional evidence was (1) new, (2) material, and (3) that he had good cause for his failure to submit the evidence during the administrative proceedings. See 42 U.S.C. § 405(g) (sentence six); Waite v. Bowen, 819 F.2d 1356, 1361 (7th Cir. 1987). Notably, to the extent that the letters from Dr. Hedrick and Dr. Putman summarized Collins' medical history prior to the date of the ALJ's decision (Tr. 524, see Pl.'s Br. at 28-30, 108), such evidence is not considered to be "new" for the purposes of a sentence six remand, as it was based on evidence that had been long available to Collins. See Simila v. Astrue, 573 F.3d 503,

522 (7th Cir. 2009); Jens v. Barnhart, 347 F.3d 209, 214 (7th Cir. 2003). Also, Collins' sworn affidavit dated July 1, 2009 does not contain any evidence that was not in existence or that was unavailable to Collins prior to the ALJ's decision (see Pl.'s Br. at 73-75). Therefore, the additional evidence submitted by Collins is not "new" for the purposes of a sentence six remand and, Collins is not entitled to such relief.

Furthermore, Collins has failed to show that such additional evidence was "material" for the purposes of a sentence six remand, as the additional evidence is not reasonably likely to have changed the outcome of the ALJ's decision. See Perkins v. Chater, 107 F.3d 1290, 1296 (7th Cir. 1997) ("For sentence six purposes . . . , 'materiality' means that there is a 'reasonable probability' that the Commissioner would have reached a different conclusion had the evidence been considered"). As discussed previously, the ALJ's determination that Collins was capable of performing the range of work outlined in the RFC finding was supported by substantial evidence of record, including multiple medical source opinions, objective medical evidence, Collins' own statements, and other evidence of record such as Collins' ongoing work activity as a tow truck driver. Also, the opinions of Dr. Hedrick and Dr. Putman could not possibly constitute "material" evidence because they speak only to Collins' current condition, not to his condition at the time his application was under consideration by the Social Security Administration. See Kapusta v. Sullivan, 900 F.2d 94, 97 (7th Cir. 1990) ("[T]he reports postdating the hearing speak only to Kapusta's current condition, not to his condition at the time his application was under consideration by the Social Security Administration. If Kapusta has developed additional impairments since his first application for benefits, he may file a new application."); see also Getch v. Astrue, 539 F.3d 473, 484 (7th Cir. 2008) ("If Mr. Getch has

developed additional impairments, or his impairments have worsened, since his first application for benefits, he may submit a new application."). Significantly, Dr. Hedrick's opinion indicates that he did not begin treating Collins until July 9, 2009, which post-dates the date of the ALJ's decision and thus the alleged period of disability that was adjudicated in the ALJ's decision. Likewise, Dr. Putman's opinion indicates that he believed that Collins was disabled "at this point," presumably October 26, 2009, the date of the letter, which was nearly five months after the ALJ's decision (Tr. 524). Also, the statement from Ms. Stegemann indicates that Collins did not stop working at Hometown Rent-to-Own until February 24, 2010, nearly 9 months after the ALJ's decision (see Pl.'s Br. at 70). If Collins wants to rely on that post-dated evidence in support of his allegations of disability, his proper course of action is to file a new disability application that covers the unadjudicated period since the date of ALJ's decision. See Getch, 539 F.3d at 484; Kapusta, 900 F.2d at 97. Finally, Dr. Putman's opinion that Collins was "unable to hold any type of job" and that he was "relatively disabled" merely represents a conclusory opinion on an issue reserved to the Commissioner; therefore, it is not likely to have resulted in a different outcome had it been considered by the ALJ. See 20 C.F.R. § 404.1527(e)(1); see also Johansen v. Barnhart, 314 F.3d 283, 288 (7th Cir. 2002) ("Dr. Olson's general opinion that Johansen was 'unable to work . . .' is not conclusive on the ultimate issue of disability, which is reserved to the Commissioner."). Thus, for the reasons discussed above, the additional evidence submitted by Collins is not "material" because it is not reasonably likely to have changed the outcome of the ALJ's decision.

Finally, Collins has failed to demonstrate that he had good cause for not submitting the additional evidence until after the ALJ rendered his decision. See Perkins, 107 F.3d at 1296.

Thus, because Collins has not requested a sentence six remand and has failed to even attempt to satisfy his burden of showing that he was entitled to a sentence six remand, this Court cannot grant Collins such relief. See Eads, 983 F.2d at 817; see also Waite v. Bowen, 819 F.2d 1356, 1361 (7th Cir. 1987).

Accordingly, as the ALJ's decision is sufficiently supported by the record, the decision to deny benefits will be affirmed.

Conclusion

Based on the foregoing, the decision of the ALJ is hereby AFFIRMED.

Entered: October 19, 2010.

s/ William C.  Lee
William C. Lee, Judge
United States District Court